PHILLIP A. TALBERT
United States Attorney
ELLIOT C. WONG
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile:  (916) 554-2900

Attorneys for Plaintiff
United States of America

# IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO.  2:22-CR-0195 KJM |
| Plaintiff, | PLEA AGREEMENT |
| v. | DATE: |
| | TIME: |
| TYLER RIGSBEE, | COURT: |
| Defendant. | |

## I.  INTRODUCTION

### A.  Scope of Agreement.

The information in this case charges the defendant with a single violation of 18 U.S.C. § 1028A — Aggravated Identity Theft.  This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case.  This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

### B.  Court Not a Party.

The Court is not a party to this plea agreement.  Sentencing is a matter solely within the discretion of the Court, and the Court may take into consideration any and all facts and circumstances

PLEA AGREEMENT                                                      1

concerning the criminal activities of defendant, including activities which may not have been charged in the information. The Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all of the obligations under this plea agreement. The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will receive.

## II.    **DEFENDANT'S OBLIGATIONS**

### A.    **Guilty Plea.**

The defendant will plead guilty to the single count of 18 U.S.C. § 1028A – Aggravated Identity Theft. The defendant agrees that he is in fact guilty of this charge and that the facts set forth in the Factual Basis for Plea attached hereto as Exhibit A are accurate.

The defendant agrees that this plea agreement will be filed with the Court and become a part of the record of the case. The defendant understands and agrees that he will not be allowed to withdraw his plea should the Court not follow the government's sentencing recommendations.

The defendant agrees that the statements made by him in signing this Agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a guilty plea pursuant to this Agreement. The defendant waives any rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410, to the extent that these rules are inconsistent with this paragraph or with this Agreement generally.

1.    Waiver of Indictment:

The defendant acknowledges that under the United States Constitution he is entitled to be indicted by a grand jury on the charge to which he is pleading guilty and that pursuant to Fed.R.Crim.P. 7(b) he agrees to waive any and all rights he has to being prosecuted by way of indictment to the charge set forth in the information. The defendant agrees that at a time set by the Court, he will sign a written

waiver of prosecution by Indictment and consent to proceed by Information rather than by Indictment.

**B.    Restitution.**

The Mandatory Victim Restitution Act requires the Court to order restitution to the victims of certain offenses.  The defendant agrees the conduct to which he is pleading guilty requires mandatory restitution pursuant to 18 U.S.C. § 3663A(c)(1)(A)(ii), and agrees to pay restitution to the victim for the total loss to the victim as a result of the scheme in the approximate amount of $158,960.69.

Defendant agrees that all criminal monetary penalties imposed by the court, including restitution, will be due in full immediately at time of sentencing and subject to immediate enforcement by the government.  Defendant agrees that any payment schedule or plan set by the court is merely a minimum and does not foreclose the United States from collecting all criminal monetary penalties at any time through all available means.

Notwithstanding the above paragraph, Defendant additionally agrees to make a pre-sentencing restitution payment in the amount of $25,000, which shall be due seven business days before sentencing.

Defendant further agrees that he will not seek to discharge any restitution obligation or any part of such obligation in any bankruptcy proceeding.

Defendant shall not sell, encumber, transfer, convey, or otherwise dispose of any of his assets without prior written consent of the United States Attorney, except that the defendant may sell, transfer or convey personal property (including used vehicles and personal items, but not financial instruments, ownership interests in business entities or real property) with an aggregate value of less than $5,000.

Payment of restitution shall be by cashier's or certified check made payable to the Clerk of the Court.

**C.    Fine.**

The defendant reserves the right to argue to Probation and at sentencing that he is unable to pay a fine, and that no fine should be imposed.  The defendant understands that it is his burden to affirmatively prove that he is unable to pay a fine, and agrees to provide a financial statement under penalty of perjury to the Probation Officer and the government in advance of the issuance of the draft Presentence Investigation Report, along with supporting documentation.  The government retains the right to oppose the waiver of a fine.  If the Court imposes a fine, the defendant agrees to pay such fine if and as ordered

PLEA AGREEMENT

1   by the Court, up to the statutory maximum fine for the defendant's offense..

2        **D.**     **Special Assessment.**

3        The defendant agrees to pay a special assessment of $100 at the time of sentencing by delivering

4   a check or money order payable to the United States District Court to the United States Probation Office

5   immediately before the sentencing hearing. The defendant understands that this plea agreement is

6   voidable at the option of the government if he fails to pay the assessment prior to that hearing.

7        **E.**     **Violation of Plea Agreement by Defendant/Withdrawal of Plea(s).**

8        If the defendant violates this plea agreement in any way, withdraws his plea, or tries to withdraw

9   his plea, this plea agreement is voidable at the option of the government. If the government elects to

10   void the agreement based on the defendant's violation, the government will no longer be bound by its

11   representations to the defendant concerning the limits on criminal prosecution and sentencing as set

12   forth herein. A defendant violates the plea agreement by committing any crime or providing or

13   procuring any statement or testimony which is knowingly false, misleading, or materially incomplete in

14   any litigation or sentencing process in this case, or engages in any post-plea conduct constituting

15   obstruction of justice. Varying from stipulated Guidelines application or agreements regarding

16   arguments as to 18 United States Code section 3553, as set forth in this agreement, personally or through

17   counsel, also constitutes a violation of the plea agreement. The government also shall have the right (1)

18   to prosecute the defendant on any of the counts to which he pleaded guilty; (2) to reinstate any counts

19   that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would

20   otherwise be barred by this plea agreement. The defendant shall thereafter be subject to prosecution for

21   any federal criminal violation of which the government has knowledge. The decision to pursue any or

22   all of these options is solely in the discretion of the United States Attorney's Office.

23        By signing this plea agreement, the defendant agrees to waive any objections, motions, and

24   defenses that the defendant might have to the government's decision. Any prosecutions that are not

25   time-barred by the applicable statute of limitations as of the date of this plea agreement may be

26   commenced in accordance with this paragraph, notwithstanding the expiration of the statute of

27   limitations between the signing of this plea agreement and the commencement of any such prosecutions.

28   The defendant agrees not to raise any objections based on the passage of time with respect to such

counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts that were not time-barred as of the date of this plea agreement. The determination of whether the defendant has violated the plea agreement will be under a probable cause standard.

In addition, (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed. By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

**F.    Asset Disclosure.**

The defendant agrees to make a full and complete disclosure of his assets and financial condition, and will complete the United States Attorney's Office's "Authorization to Release Information" and "Financial Disclosure Statement" within three (3) weeks from the entry of the defendant's change of plea, including supporting documentation. The defendant also agrees to have the Court enter an order to that effect. The defendant understands that if he fails to complete truthfully and provide the described documentation to the United States Attorney's Office within the allotted time, he will be considered in violation of the agreement, and the government shall be entitled to the remedies set forth in section II.E above.

Defendant expressly authorizes the United States to immediately obtain a credit report to evaluate defendant's ability to satisfy any monetary penalty imposed by the court. Defendant also authorizes the U.S. Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office.

**III.    THE GOVERNMENT'S OBLIGATIONS**

**A.    Dismissals/Other Charges.**

The government agrees not to bring any other charges arising from the conduct outlined in the

Factual Basis attached hereto as Exhibit A, or to reinstate any dismissed count except if this agreement is voided as set forth herein, or as provided in paragraphs II.E (Violation of Plea Agreement by Defendant/Withdrawal of Plea(s)), VI.B (Estimated Guideline Calculation), and VII.B (Waiver of Appeal and Collateral Attack) herein.

    **B.**   **Recommendations.**

        1.   Incarceration Range.

The government and the Defendant will jointly recommend that the defendant be sentenced to the mandatory two-year term of imprisonment.

    **C.**   **Use of Information for Sentencing.**

The government is free to provide full and accurate information to the Court and Probation, including answering any inquiries made by the Court and/or Probation and rebutting any inaccurate statements or arguments by the defendant, his attorney, Probation, or the Court. The defendant also understands and agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

## IV.   ELEMENTS OF THE OFFENSE

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offense to which the defendant is pleading guilty, a violation of 18 U.S.C. § 1028A – Aggravated Identity Theft:

(1) that the defendant knowingly transferred possess, or used, without legal authority, a means of identification of another person or a false identification document;

(2) that the defendant knew that the means of identification belonged to a real person; and

(3) that the defendant did so during and in relation to a specific felony violation of, to wit, 18 U.S.C. § 1344 – Bank Fraud.

The defendant fully understands the nature and elements of the crime charged in the information to which he is pleading guilty, together with the possible defenses thereto, and has discussed them with his attorney.

## V.   MAXIMUM SENTENCE

### A.   Maximum Penalty.

The maximum sentence that the Court must impose is a mandatory term of imprisonment of 2 years' incarceration, a fine of $250,000, a one year period of supervised release, and a special assessment of $100.  By signing this plea agreement, the defendant also agrees that the Court can order the payment of restitution for the full loss caused by the defendant's wrongful conduct.  The defendant agrees that the restitution order is not restricted to the amounts alleged in the specific count to which he is pleading guilty.  The defendant further agrees, as noted above, that he will not attempt to discharge in any present or future bankruptcy proceeding any restitution imposed by the Court.

### B.   Violations of Supervised Release.

The defendant understands that if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to one additional year of imprisonment.

## VI.   SENTENCING DETERMINATION

### A.   Statutory Authority.

The defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence.  The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take them into account when determining a final sentence.  The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines.  The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

### B.   Estimated Guideline Calculation.

24  Stipulations Affecting Guideline Calculation:  The government and the defendant agree that there is no material dispute as to the following guidelines variables and therefore stipulate to

1  the following:   Months (§ 2B1.6 – guideline sentence is the term of imprisonment required

2  by statute)

3      The parties agree that they will not seek or argue in support of any other specific offense

4  characteristics, Chapter Three adjustments (other than the decrease for "Acceptance of Responsibility"),

5  or cross-references.  Both parties agree not to move for, or argue in support of, any departure from the

6  Sentencing Guidelines, or any deviance or variance from the Sentencing Guidelines under United States

7  v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005).

8                  **VII.      WAIVERS**

9      **A.      Waiver of Constitutional Rights.**

10     The defendant understands that by pleading guilty he is waiving the following constitutional

11 rights:  (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to

12 be assisted at trial by an attorney, who would be appointed if necessary; (d) to pursue any affirmative

13 defenses, Fourth Amendment or Fifth Amendment claims, constitutional challenges to the statutes of

14 conviction, and other pretrial motions that have been filed or could be filed; (e) to subpoena witnesses to

15 testify on his behalf; (f) to confront and cross-examine witnesses against him; and (g) not to be

16 compelled to incriminate himself.

17     **B.      Waiver of Appeal and Collateral Attack.**

18     The defendant understands that the law gives the defendant a right to appeal his guilty plea,

19 conviction, and sentence.  The defendant agrees as part of his plea, however, to give up the right to

20 appeal the guilty plea, conviction, and the sentence imposed in this case as long as the sentence does not

21 exceed the statutory maximum for the offense to which he is pleading guilty.  The defendant

22 understands that this waiver includes, but is not limited to, any and all constitutional and/or legal

23 challenges to the defendant's conviction and guilty plea, including arguments that the statutes to which

24 defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts

25 attached to this agreement is insufficient to support the defendant's plea of guilty.  The defendant

26 specifically gives up the right to appeal any order of restitution the Court may impose.

27     Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if

28 one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the

PLEA AGREEMENT                                      8

1  statutory maximum; and/or (2) the government appeals the sentence in the case. The defendant

2  understands that these circumstances occur infrequently and that in almost all cases this Agreement

3  constitutes a complete waiver of all appellate rights.

4      In addition, regardless of the sentence the defendant receives, the defendant also gives up any

5  right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any

6  aspect of the guilty plea, conviction, or sentence, except for non-waivable claims.

7      Notwithstanding the government's agreements in paragraph III.A above, if the defendant ever

8  attempts to vacate his plea(s), dismiss the underlying charge, or modify or set aside his sentence on any

9  of the counts to which he is pleading guilty, the government shall have the rights set forth in Section II.E

10 herein.

11     **C.     Waiver of Attorneys' Fees and Costs.**

12     The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-

13 119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the

14 investigation and prosecution of all charges in the above-captioned matter and of any related allegations

15 (including without limitation any charges to be dismissed pursuant to this plea agreement and any

16 charges previously dismissed).

17     **D.     Impact of Plea on Defendant's Immigration Status.**

18     Defendant recognizes that pleading guilty may have consequences with respect to his

19 immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes

20 are removable offenses, including offense(s) to which the defendant is pleading guilty. The defendant

21 and his counsel have discussed the fact that the charge to which the defendant is pleading guilty is an

22 aggravated felony, or a crime that is likely to be determined to be an aggravated felony under 8 USC §

23 1101(a)(43), and that while there may be arguments that defendant can raise in immigration proceedings

24 to avoid or delay removal, it is virtually certain that defendant will be removed. Removal and other

25 immigration consequences are the subject of a separate proceeding, however, and defendant understands

26 that no one, including his attorney or the district court, can predict to a certainty the effect of his

27 conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty

28 regardless of any immigration consequences that his plea may entail, even if the consequence is his

automatic removal from the United States.

## VIII.     ENTIRE PLEA AGREEMENT

Other than this plea agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

## IX.     APPROVALS AND SIGNATURES

A.     **Defense Counsel.**

I have read this plea agreement and have discussed it fully with my client.  The plea agreement accurately and completely sets forth the entirety of the agreement.  I concur in my client's decision to plead guilty as set forth in this plea agreement.

Dated:  9/23/22

_____
THOMAS A. JOHNSON
Attorney for Defendant

B.     **Defendant:**

I have read this plea agreement and carefully reviewed every part of it with my attorney.  I understand it, and I voluntarily agree to it.  Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case.  No other promises or inducements have been made to me, other than those contained in this plea agreement.  In addition, no one has threatened or forced me in any way to enter into this plea agreement.  Finally, I am satisfied with the representation of my attorney in this case.

Dated: 9 / 23 / 2022

_____
TYLER RIGSBEE
Defendant

///

///

///

///

PLEA AGREEMENT

10

**C.**     <u>**Attorney for United States:**</u>

I accept and agree to this plea agreement on behalf of the government.

Dated:   9/27/22

PHILLIP A. TALBERT
United States Attorney

ELLIOT C. WONG
Assistant United States Attorney

PLEA AGREEMENT                                            11

EXHIBIT "A"

Factual Basis for Plea(s)

On or about March 15, 2019, in the County of Sacramento, State and Eastern District of California, RIGSBEE did knknowingly transfer, possess, and use, without lawful authority, a means of identification, to wit: the name of PERSON 1 on a notarized request for distribution of eligible assets and a notarized affidavit of domicile, during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A, to wit: bank fraud in violation of Title 18, United States Code, Section 1344, knowing that the means of identification belonged to another actual person.

At all relevant times, RIGSBEE was a FINRA-registered general securities representative and employed as a financial advisor at Bank 1.

Without the knowledge or consent of Bank 1 customers in question, RIGSBEE transferred monies, funds, credits, assets, securities, and other property from customer accounts at Bank 1 into brokerage accounts he created at E-Trade, a third-party financial institution. RIGSBEE then transferred the funds from these E-Trade brokerage accounts into his own personal bank account at Bank 1. RIGSBEE targeted the funds of three elderly Bank 1 clients before he was caught.

**Customer 1 – RIGSBEE stole money from a Bank 1 customer who passed away.**

RIGSBEE stole money from Customer 1's account after Customer 1 died. Customer 1 died in or about August 2018. Customer 1's nephew, Person 1, was listed as the beneficiary on Customer 1's account at Bank 1. RIGSBEE created an E-Trade account in Person 1's name by falsely pretending that he was Person 1 and using Person 1's name. Person 1 did not know about the creation of the E-Trade account or ever consent to its creation. After Customer 1's death, RIGSBEE created and notarized a fraudulent request for distribution of eligible assets from a transfer on death account, using the name and identity of Person 1, to direct the funds to the E-Trade account in Person 1's name that RIGSBEE controlled. On or about March 15, 2019, RIGSBEE submitted this request for distribution of eligible assets to Bank 1's estate processing department via fax. As a result, approximately over $113,000 in assets were transferred from Customer 1's account at Bank 1 to the E-Trade brokerage account in the name of Person 1 that RIGSBEE controlled. RIGSBEE then transferred the funds from this brokerage account into his own personal bank account at Bank 1.

**Customer 2 – RIGSBEE stole money from another elderly Bank 1 customer.**

In another similar instance, RIGSBEE created a fraudulent E-Trade account in the name of Customer 2 by falsely pretending that he was Customer 2 and using Customer 2's name. Customer 2 is elderly and had an account at Bank 1. Customer 2 did not know about the E-Trade account controlled by RIGSBEE or consent to it. After setting up the E-Trade account, RIGSBEE transferred approximately $45,800 total from Customer 2's account at Bank 1 into the E-Trade brokerage account in Customer 2's name that RIGSBEE controlled. RIGSBEE then transferred the funds from the brokerage account into his own personal bank account at Bank 1.

**Customer 3 – RIGSBEE tried to use Customer 3's funds to refill Customer 2's account.**

Third, RIGSBEE tried to use money from Customer 3's account at Bank 1 to partially replace funds he took from Customer 2. Customer 3 was also elderly. RIGSBEE created a fraudulent E-Trade

account, this time in Customer 3's name.  RIGSBEE then transferred money from Customer 3's account at Bank 1 to the the fraudulent E-Trade account in Customer 3's name.  RIGSBEE next tried to transfer the funds from the E-Trade account in Customer 3's name to Customer 2's account at Bank 1.  This transaction was flagged, however, and the funds were reverted.

**Bank 1 fired RIGSBEE**

Bank 1 investigated RIGSBEE and subsequently fired him. RIGSBEE entered into a consent agreement with the Financial Industry Regulatory Authority (FINRA) under which he is barred from associating with any FINRA member in all capacities.  Bank 1 made Customers 1, 2, and 3 (and their beneficiaries where appropriate) whole for the stolen funds.  Bank 1 thus ultimately bore all of the financial loss for RIGSBEE's conduct described above.

As a result of the scheme, RIGSBEE defrauded Bank 1 of approximately $158,960.69.

*****

I, Tyler Rigsbee, have read and carefully reviewed the above Exhibit A: Factual Basis for Plea with my attorney. The facts described above are true and I adopt this Factual Basis as my own true statement.

Dated: 9/23/2022

TYLER RIGSBEE
Defendant

PLEA AGREEMENT                                          A-2